946 F.2d 895
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Miguel A. LORENZINI, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee,
George P. Georges, Counterclaim Defendant-Appellee.
 Nos. 88-1934, 88-1935.
 United States Court of Appeals, Sixth Circuit.
 Oct. 4, 1991.
 
 Before RALPH B. GUY, JR. and RYAN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff Miguel A. Lorenzini appeals from the judgment for the government in this civil action for a refund of taxes which arose from the penalty assessed against him pursuant to I.R.C. § 6672. The issue on appeal is whether the district court correctly held that Lorenzini was a "responsible person" for the payment of taxes within the definition of I.R.C. § 6672. We affirm.
 
 I.
 
 2
 In October 1985, the IRS determined that Lorenzini willfully failed to collect, truthfully account for, and pay over the Federal Income and Federal Insurance Contributions Act ("FICA") taxes withheld for the last two quarters of 1981 and the first two quarters of 1982 for Lakeside Dental Supply Company ("Lakeside"). The IRS assessed a 100% penalty against Lorenzini for $163,309.90, pursuant to 26 U.S.C. § 6672, in the following amounts:
 
 
 3
 Third Quarter, 1981 $ 26,898.36
Fourth Quarter, 1981 40,557.92
First Quarter, 1982 52,492.18
Second Quarter, 1982 43,361.44
 ---------------
 Total $163,309.90
 
 
 4
 Lakeside was a wholesale dental supply company operating out of Detroit, Michigan. Lorenzini was a 78% shareholder and George Georges was a 22% shareholder. Both were directors of Lakeside. Lorenzini was secretary, and Georges was executive vice president. Georges conducted the day-to-day operations of the company, including the hiring and firing of employees, preparing and issuing the payroll, preparing the bookkeeping and internal accounting of Lakeside, and filing and paying the federal, state, and local tax returns. Georges functioned as the chief operating officer until June 9, 1982, when Lorenzini, in his capacity as secretary and chairman of the board, fired Georges and dismissed him from the board of directors. Lorenzini then became president.
 
 
 5
 Prior to June 1982, Lorenzini was not involved in the day-to-day operations of Lakeside. However, he had weekly telephone conversations with Georges concerning the business affairs of Lakeside and about major acquisitions. Moreover, Lorenzini met with prospective salesmen and vendors, attended sales conferences, and signed Lakeside's sales brochure in which his photograph appeared. When Lakeside began experiencing financial difficulty, Lorenzini became more active in the operations of the business. He met or spoke with Lakeside employees and Lakeside's financial advisors. On September 24, 1982, Lakeside ceased operations.
 
 
 6
 In May 1986, Lorenzini paid $2079 towards the assessment and filed claims for refunds of this amount, plus accrued interest. The IRS denied this request and Lorenzini then commenced this action in October 1986, claiming a refund of the $2079 paid towards the 100% penalty assessment. The government counterclaimed for the unpaid balance of the assessment, plus interest. The district court agreed with the IRS' determination and held Lorenzini personally liable for the withheld taxes under section 6672.
 
 II.
 A.
 
 7
 Lorenzini alleges that the district court erred in finding that he was a responsible person who willfully failed to carry out his tax obligations to the government, in violation of I.R.C. § 6672(a). He claims that he is not a "responsible person" within the definition of I.R.C. § 6672 because he was not required to withhold and pay over income and social security taxes withheld from the wages of Lakeside's employees until he took control on June 9, 1982.
 
 
 8
 Under section 6672(a), an individual is personally liable for unpaid taxes withheld from the earnings of employees if "he is an officer or an employee of a corporation who is under a duty to collect and pay over the taxes to the government, and willfully fails to do so." Collins v. United States, 848 F.2d 740, 741 (6th Cir.1988). The Internal Revenue Code requires employers to withhold from their employees' paychecks money representing the employees' personal income taxes and social security taxes. I.R.C. §§ 3102(a), 3402(a). Because federal law requires employers to hold these funds "in trust for the United States," these taxes are commonly referred to as "trust fund taxes." Slodov v. United States, 436 U.S. 238, 242-43 (1978); I.R.C. § 7501(a).
 
 
 9
 These trust fund taxes are for the exclusive use of the government and cannot be used to pay business expenses of the employer, including salaries. It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern--the government cannot be made an unwilling partner in a floundering business.
 
 
 10
 Collins, 848 F.2d at 741-42 (citations omitted).
 
 
 11
 Addressing the requirements of Section 6672, the Supreme Court has stated that "[s]hould employers fail to pay trust fund taxes, the Government may collect an equivalent sum directly from the officers or employees of the employer who are responsible for collecting the tax." United States v. Energy Resources Co., 110 S.Ct. 2139, 2140-41 (1990). Those individuals who are liable under section 6672 are those persons "who make[ ] a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than make tax payments...." Collins, 848 F.2d at 742.
 
 
 12
 Among the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees are: (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation.
 
 
 13
 Gephart v. United States, 818 F.2d 469, 473 (6th Cir.1987).
 
 
 14
 Lorenzini claims that the district court erred when it concluded that he was a responsible person under I.R.C. § 6672. Because the IRS' assessment under section 6672(a) is presumed correct, Lorenzini has the burden of proving, by a preponderance of the evidence, that he was not a responsible person who willfully failed to pay over the withheld taxes. See Collins, 848 F.2d at 742.
 
 
 15
 Although Georges was the chief operating officer of Lakeside until June 9, 1982, we find that Lorenzini was also a responsible person within the meaning of section 6672 during that time. Lorenzini had significant control over the disbursement of corporate funds. He was Lakeside's major shareholder and had individual check-signing authority for all corporate accounts. Lorenzini also had the power to direct which creditors Georges would pay. For example, at Lorenzini's direction, Georges paid three personal bills to the Grosse Pointe Hockey team, the Grosse Pointe Hunt Club, and a personal contract.
 
 
 16
 Moreover, Lorenzini had the authority to hire and fire Lakeside employees as evidenced by his hiring and firing of Georges, Samuel Misuraca, the corporate attorney, and Carl Henry, the corporate accountant. In addition, he was at all times apprised of Lakeside's affairs: he met with salesmen and vendors; attended sales conventions; busied himself in the acquisition of Lakeside's computer; and concerned himself with Lakeside's insurance and stock options.
 
 
 17
 Nevertheless, Lorenzini claims that the lower court mistakenly considered his activities as president of Lakeside after June 9, 1982, in concluding that he controlled the disbursement of funds prior to that time. Even assuming that Lorenzini was not in control of Lakeside prior to June 9, 1982, we find him "responsible" within the definition of section 6672 under Slodov. There, a taxpayer argued that he was not responsible for the payment of employment taxes that were collected before he assumed control of the corporation. The Supreme Court specifically rejected this argumemt and held that "a 'responsible person' under § 6672 may violate the 'pay over' requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control when at the time he assumed control the corporation ha[d] funds impressed with a trust...." Slodov, 436 U.S. at 259. The Court reasoned that section 6672 was designed "to assure compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil and criminal penalties for the employer's delinquency." Id. at 247 (emphasis added).
 
 
 18
 Accordingly, Lorenzini's argument that he is not responsible for paying over those funds which were collected prior to June 9, 1982, fails as a matter of law. After Lorenzini took over active management of Lakeside, over $640,000 was paid out to various creditors, including the IRS. Instead of paying other creditors, Lorenzini was obligated to pay over the withholding taxes which were previously collected for the periods prior to his accession into control. Therefore, the district court correctly concluded that Lorenzini was a responsible person within the meaning of I.R.C. § 6672, who willfully failed to collect, truthfully account for, and pay over the withheld Federal Income and FICA taxes of Lakeside.
 
 B.
 
 19
 Lorenzini also contends that the IRS misapplied the $15,279.71 check Lakeside paid to the IRS for its withholding taxes "for the period 6-1-82 to 9-30-82." In particular, Lorenzini alleges that "it appears that the payment was applied to a tax period for which there was no liability due, (July 1, 1982, through September 30, 1982), then was bounced back to an earlier period and not applied to withholding taxes."
 
 
 20
 "IRS policy permits taxpayers who 'voluntarily' submit payments to the IRS to designate the tax liability to which the payment will apply." Energy Resources, 110 S.Ct. at 2141. Specifically, Rev.Rul. 79-284, 1979-2 C.B. 83 provides:
 
 
 21
 Partial payment of deficiencies; allocation to tax, penalty, and interest. Voluntary partial payments of assessed tax, penalty, and interest will be applied to withheld employment taxes and collected excise taxes as designated by the taxpayer. If no designation is made, the payments will be allocated to tax, penalty, and interest in a manner serving the best interest of the Service. Rev.Rul. 73-305 modified.
 
 
 22
 Under Rev.Rul. 79-284, if a taxpayer gives a specific instruction as to the application of the payment, the amount of such payment should be applied by the IRS to tax, penalty, and interest, in that order, for the earlier period, then to tax, penalty, and interest, in that order, for the next succeeding period until the payment is absorbed.
 
 
 23
 Although Lorenzini argues that the IRS violated this policy, he fails to provide evidence to support this contention. Because there is no evidence in the record to support Lorenzini's claim, we find that he has failed to meet his burden of proof.
 
 
 24
 We note, however, in light of Rev.Rul. 79-284, the district court's blanket statement that the IRS could "apply the payment to withheld income and FICA tax liability of Lakeside for the third quarter of 1982" needs clarification. The IRS could apply the payment to the third quarter of 1982 only after the taxes, penalties, and interest assessed against Lakeside were paid for the period of June 1, 1982 to June 30, 1982.
 
 III.
 
 25
 For the foregoing reasons, we AFFIRM the judgment of the district court.